Citation Nr: 1448562 
Decision Date: 10/31/14 Archive Date: 11/05/14

DOCKET NO. 09-00 608 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Seattle, Washington


THE ISSUES

1. Entitlement to service connection for an acquired psychiatric disorder, to include depression. 

2. Entitlement to service connection for a right knee disorder. 

3. Entitlement to service connection for a left knee disorder. 

4. Entitlement to service connection for a neck disorder. 

5. Entitlement to service connection for a left ankle disorder. 

6. Entitlement to service connection for a right ankle disorder. 

7. Entitlement to service connection for a right hip disorder. 

8. Entitlement to service connection for a right leg disorder. 



REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

The Veteran 


ATTORNEY FOR THE BOARD

J. Murray, Counsel 


INTRODUCTION

The Veteran served on active duty in the United States Marine Corps from February 1994 to August 1994. 

These matters come on appeal to the Board of Veterans' Appeal (Board) from August 2006 and September 2007 rating decisions by the Department of Veterans Affairs, Regional Office located in Seattle, Washington (RO), which in pertinent part, denied the benefits sought on appeal. 

The Veteran presented testimony before the undersigned Veterans Law Judge in July 2012, and a transcript of this hearing has been associated with the record. The Board hearing was sufficient to fulfill his right to a hearing under 38 C.F.R. § 20.700(a) (2014).

In October 2012, the Board remanded the claims for service connection for right hip and right leg disorders to the RO (via the Appeals Management Center (AMC)) to issue the Veteran a statement of the case (SOC), and the Veteran's representative submitted a timely substantive appeal with respect to both issues. As such, the claims are currently on appeal

Also in the October 2012 determination, the Board remanded the claims of entitlement to service connection for lumbar spine disorder, left lower extremity disorder, acquired psychiatric disorder, bilateral knee disorder, and bilateral ankle disorder to the RO (via AMC) for additional development, to include obtaining outstanding records of pertinent treatment and to afford the Veteran with VA examinations in conjunction with his claims. A review of the claims folder reflects that the Veteran failed to respond to a November 2012 request for assistance in identifying outstanding records of pertinent treatment and he was afforded VA examinations in March 2013. The Board finds that there has been compliance with the remand directives, and no further action is required. See Stegall v. West, 11 Vet. App. 268, 271 (1998). 

In a June 2013 rating decision, the AMC awarded service connection for lumbar spine disability and left radiculopathy, which reflects the awards of the full benefit sought. The Veteran did not appeal the initial assigned evaluation or effective date. 

The issue of entitlement to service connection for scars has been raised by the record but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action.

The Board has not only reviewed the Veteran's physical claims file but also the Veteran's file on the "Virtual VA" system to insure a total review of the evidence.

The issue of issues of entitlement to service connection for right hip and right leg disorders are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The competent medical evidence of record likely demonstrates that the Veteran's current diagnosed depression disorder is proximately caused by his service-connected lumbar spine disability. 

2. The competent evidence of record does not show that the Veteran has a current right knee disorder. 

3. The competent evidence of record does not show that the Veteran has a current left knee disorder.

4. The preponderance of the competent evidence is against a finding that the Veteran's current left ankle disorder, identify as mild ankle strain, is related to any aspect of his service. 

5. The preponderance of the competent evidence is against a finding that the Veteran's current right ankle disorder, identify as mild ankle strain, is related to any aspect of his service.

6. The preponderance of the competent evidence is against a finding that the Veteran's current neck disorder, identify as mild cervical sprain, is related to any aspect of his service.


CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for depression disorder have been met. 38 U.S.C.A. §§ 1110, 1113(b), 1117, 5107(b) (West 2002); 38 C.F.R. §§ 3.303, 3.307, 3.309, and 3.310 (2014).

2. The criteria for entitlement to service connection for a right knee disorder have not been met. 38 U.S.C.A. §§ 1101, 1131, 1112, 1113 (West 2002); 38 C.F.R. § 3.303 (2014).
 
3. The criteria for entitlement to service connection for a left knee have not been met. 38 U.S.C.A. §§ 1101, 1131, 1112, 1113 (West 2002); 38 C.F.R. § 3.303 (2014).

4. The criteria for entitlement to service connection for a right ankle disorder have not been met. 38 U.S.C.A. §§ 1101, 1131, 1112, 1113 (West 2002); 38 C.F.R. § 3.303, 3.307, 3.309 (2014).
 
5. The criteria for entitlement to service connection for a left ankle disorder have not been met. 38 U.S.C.A. §§ 1101, 1131, 1112, 1113 (West 2002); 38 C.F.R. § 3.303, 3.307, 3.309 (2014).

6. The criteria for entitlement to service connection for a neck disorder have not been met. 38 U.S.C.A. §§ 1101, 1131, 1112, 1113 (West 2002); 38 C.F.R. § 3.303, 3.307, 3.309 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

1. VA's Duty to Notify and Assist 

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), the United States Department of Veterans Affairs has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). 

Under 38 U.S.C.A. § 5103, VA must notify the claimant of any information or evidence not of record that is necessary to substantiate the claim, as well as what parts of that information or evidence VA will seek to provide, and what parts VA expects the claimant to provide. 38 C.F.R. § 3.159(b). VA must provide such notice to a claimant prior to an initial unfavorable decision on a claim for VA benefits by the agency of original jurisdiction (AOJ), even if the adjudication occurred prior to the enactment of VCAA. See Pelegrini v. Principi, 18 Vet. App. 112, 119-120 (2004). 

Importantly, the VCAA requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all elements of a claim for service connection, so that VA must specifically provide notice that a disability rating and an effective date will be assigned if service connection is awarded. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006); aff'd sub nom., Hartman v. Nicholson, 483 F.3d 1311 (2007). 

VA sent letters to the Veteran in December 2005, March 2006 and September 2007 that addressed the notice elements concerning his claims. The letters informed the Veteran of what evidence is required to substantiate the claim, and apprised the Veteran as to his and VA's respective duties for obtaining evidence. VA also informed the Veteran how it determined the disability rating and the effective date for the award of benefits if service connection was to be awarded. Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

The Board finds that all notices required by VCAA and implementing regulations were furnished to the Veteran and that no useful purpose would be served by delaying appellate review to send out additional VCAA notice letters.

With regard to the duty to assist, the Veteran's VA treatment records, available private treatment records identified by the Veteran, and his lay statements of argument have been obtained. The Board acknowledges that a complete set of the Veteran's service treatment records is not available for review. In May 2012, the RO issued a "Formal Finding for the Unavailability of Complete Service Treatment Records," which demonstrated the extensive efforts that the RO undertook to attempt to locate the Veteran's service treatment records. It does not appear that any further attempts to obtain the Veteran's service treatment records would be successful. The RO also notified the Veteran that his service treatment records were unavailable, and requested that he send any records he may have, or any information as to their whereabouts to VA. The Veteran responded that he did not have any records and cannot send them to VA. 

The Board finds that the VA has satisfied its heightened duty to assist the Veteran. In such situations, the Board also has a heightened obligation to explain its findings and conclusions, and to consider fully the benefit-of-the-doubt rule. See Cuevas v. Principi, 3 Vet. App. 542, 584 (1992); O'Hare v. Derwinski, 1 Vet App. 365 (1991); Layno v. Brown, 6 Vet. App. 465, 469 (1994). The Board is mindful of this obligation in its determination below.

Given VA's heightened duty to assist the Veteran, the Board in its 2012 remand directives instructed the RO (via the AMC) to provide the Veteran with a VA examination in conjunction with his claims. The Veteran was provided with March 2013 VA examinations to determine the nature and etiology of his claimed psychiatric disorder, neck disorder, bilateral ankle disorder and bilateral knee disorder. The examination report show that the VA examiner noted a review of the claims folder and recorded the Veteran's reported medical history as well as clinical findings from examination. The VA examiner provided medical opinions that were supported by rational statements on the nature and etiology of the claimed disorders. The VA examination reports are adequate for VA adjudication purposes. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). 

The Veteran has not identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. See Bernard v. Brown, 4 Vet. App. 384 (1993). 

For the foregoing reasons, the Board therefore finds that VA has satisfied its duty to notify and its duty to assist pursuant to VCAA. See 38 U.S.C.A. §§ 5102 and 5103; 38 C.F.R. §§ 3.159(b), 20.1102; Pelegrini, supra; Quartuccio v. Principi, 16 Vet. App. 183 (2002).

2. Service Connection 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110; 38 C.F.R. § 3.303(a). 

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. If a condition noted during service is not shown to be chronic, then generally, a showing of continuity of symptoms after service is required for service connection. See 38 C.F.R. § 3.303(b). The chronicity provision of 38 U.S.C.A. § 3.303(b) is applicable where the evidence, regardless of its date, shows that a veteran had a chronic condition in service or during an applicable presumptive period and that he still has such condition. 

To prevail on the issue of service connection, generally, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

In addition, a disability that is proximately due to or the result of a service-connected injury or disease shall be service connected. 38 C.F.R. § 3.310. When service connection is thus established for a secondary condition, the secondary condition shall be considered part of the original condition. Establishing service connection on a secondary basis requires evidence sufficient to show: (1) that a current disability exists, and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998).

A disability which is aggravated by a service-connected disorder may be service connected, but compensation is only available for the degree to which that condition was made worse by the service-connected condition - only to the degree that the aggravation is shown. 38 C.F.R. § 3.310. In such a situation, VA laws require that the medical evidence must show a baseline level of severity of the nonservice-connected disease or injury, which is established by medical evidence created before the onset of aggravation. Id. 

The determination as to whether the requirements for service connection are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. 38 U.S.C.A. § 7104(a); Baldwin v. West, 13 Vet. App. 1 (1999); 38 C.F.R. § 3.303(a). If there is at least an approximate balance of positive and negative evidence regarding any issue material to the claim, the claimant shall be given the benefit of the doubt in resolving each such issue. 38 U.S.C.A. § 5107; Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); 38 C.F.R. §§ 3.102. 

An Acquired Psychiatric Disorder 

The Veteran seeks entitlement to service connection for an acquired psychiatric disorder. He contends that his current diagnosed disorder is related to his period of service. 

In this case, the evidence of record supports an award of service connection on a secondary proximately-caused basis, and as such, the Board does not need not address service connection on secondary aggravation basis or on direct basis in this matter. There is no doubt that the Veteran meets elements (1) and (2) as the medical evidence of record demonstrates that the Veteran has a current diagnosis of depression, and he has been awarded service-connection for lumbar spine disability. 

The remaining issue, therefore, is whether element (3), evidence of a nexus between the service-connected lumbar spine disability and depression disorder, is met. Here, the record contains a March 2013 VA medical opinion, in which the VA examiner concluded that the Veteran's primary symptoms of depression are associated with his medical condition, to include his January 2000 back injury. Notably, in a June 2013 rating decision, the RO awarded service connection for lumbar spine disability. Although the 2013 VA examiner indicated that the Veteran's depression was linked to his medical conditions resulting from his January 2000 back injury, which comes after his separation from service, there is no medical evidence delineating between what lumbar spine symptomatology is associated with his service as opposed to his January 2000 re-injury. See Mittleider v. West, 11 Vet. App. 181, 182 (1998); see also 38 C.F.R. § 3.102. Since the Veteran has been compensated for all of his lumbar spine symptomatology and there is a medical opinion linking his current diagnosed depression to his lumbar spine disability, element (3), evidence of a nexus between the service-connected lumbar spine disability and depression disorder, has been satisfied. 

As such, the medical evidence likely demonstrates that the Veteran's current diagnosed depression disorder is proximately due to his service-connected lumbar spine disaiblity. Accordingly, an award of service connection on a causal basis has been shown and the benefit sought on appeal is allowed. 

Bilateral Knee Disorder 

The Veteran seeks entitlement to service connection for right and left knee disorders. 

As noted above, a complete set of the Veteran's service treatment records is unavailable. The record does contain the report of his August 1994 medical history at the time of separation from service. The August 1994 report shows that the Veteran indicated that he had experienced swollen or painful joints, leg cramps, and "trick" or locked knee, but none of the available service treatment records show an injury or treatment pertaining to the Veteran's knees. 

Post-service treatment records do not reflect chronic disorder involving either of the Veteran's knees. 

The Veteran underwent a VA examination in March 2013 to determine the nature and etiology of his claimed right and left knee disorders. At that time, the Veteran informed the VA examiner that he experienced bilateral knee pain since basic training due to physical training activities. He further informed the VA examiner that he had been diagnosed with tendonitis in his knees in service and he continues to experience symptoms of pain and "popping" sensation in his knees. The Veteran reported that he experienced flare-ups in bilateral knee pain with activity. On clinical evaluation, the VA examiner observed that the Veteran had full range of motion in both knees and there was no evidence of painful motion or additional limitation of motion due to repetitive use. There was no evidence of muscle weakness, instability, or tenderness in either knee. X-ray films of the knees were negative for abnormalities. The VA examiner stated that no diagnosis can be given for the Veteran's claimed bilateral knee disorder as clinical and radiologic examinations were negative for any abnormalities. The VA examiner concluded that the medical evidence did not support a current diagnosis involving his right or left knee. 

In order to warrant service connection, the threshold requirement is competent medical evidence of the existence of the claimed disability at some point during a veteran's appeal. See McClain v. Nicholson, 21 Vet. App. 319 (2007) (requirement that a current disability be present is satisfied "when a claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim...even though the disability resolves prior to the Secretary's adjudication of the claim"); Degmetich v. Brown, 104 F.3d 1328 (1997); Brammer v. Derwinski, 3 Vet. App. 223 (1992). While the Board recognizes the Veteran's belief in his claim, the most competent medical evidence of record does not show that the Veteran has current right and left knee disorders. Indeed, the March 2013 VA examination report shows no objective findings of right and left knee disorders and the VA examiner concluded that there was no medical evidence to support a current diagnosed disability in either knee. 

The Board acknowledges the Veteran's representations of current left and right knee pain and symptomatology; however, the Board notes that symptoms such as pain do not in and of themselves constitute a disability for which service connection may be granted. See Sanchez-Benitez v. West, 13 Vet. App. 282, 285 (1999) (pain alone, without a diagnosed or identifiable underlying malady or condition, does not in and of itself constitute a disability for which service connection may be granted). As noted, the March 2013 VA examination was negative for underlying pathology.

There has been no diagnosis of right or left knee disability during the pendency of this claim. The existence of a current disability is the cornerstone of a claim for VA disability compensation, and without a current disability, service connection is not warranted. 38 U.S.C.A. § 1110; see also Shedden, 381 F.3d at 1167, and Brammer, 3 Vet. App. At 225. Here, the record unequivocally shows that the Veteran has not been diagnosed with any disability involving his right or left knee at any time during the course of the appeal. 

Thus, despite the in-service complaints of knee problems, the evidence does not demonstrate that the Veteran has a current right or left knee disability at any time during the course of the appeal. In the absence of any diagnosed right and left ankle disorders, service connection may not be granted. See Degmetich v. Brown, 104 F.3d 1328 (Fed. Cir. 1997); Gilpin v. Brown, 155 F.3d 1353 (Fed. Cir. 1998) [service connection cannot be granted if the claimed disability does not exist]. Accordingly, the benefits sought on appeal are denied.

Neck Disorder and Bilateral Ankle Disorders 

The Veteran seeks entitlement to service connection for neck disorder and bilateral ankle disorder. The Veteran reports that he carried heavy weights while in service. He believes that his current ankle and neck symptomatology are associated with injury he sustained while he carried heavy weights during his period of service. The Veteran further reports that he has experienced symptoms associated with these conditions since the time of his discharge from service.

As noted above, a complete set of the Veteran's service treatment records are unavailable for review in conjunction with his claims. The record does contain the report of his August 1994 medical history at the time of separation from service. The August 1994 report shows that the Veteran indicated that he had experienced swollen or painful joints and leg cramps. 

Post-service treatment records do reflect treatment for complaints of ankle-related problems. A February 1997 private x-ray report of the cervical spine shows that the Veteran had presented with complaints of neck pain and x-ray film revealed possible findings of reversal of normal cervical lordosis which may or may not be positional in nature. No other bone abnormalities were observed. Private treatment records dated in June 1999 and October 1999 show that the Veteran was treated for neck problems. The June 1999 private treatment record shows that the Veteran had sustained injuries when he fell off a ladder from three above the ground and braced his fall by landing on his right forearm. He complained of neck pain at the time and he was assessed with mild neck strain. The October 1999 private treatment records shows that the Veteran was treated for multiple injuries, including a neck sprain that he sustained during a recent dirt bike accident. 

Pursuant to the Board's 2012 remand directives, the Veteran was afforded VA examinations in conjunction with his neck and bilateral ankle claims. The examination report shows that the Veteran informed the VA examiner that he had first developed neck pain and bilateral ankle pain during his period of service. He reported that he hurt his neck while climbing a rope and training with a rifle. He reported that he had rolled his ankles several times during basic training for which he had sought medical treatment, to include physical therapy. The Veteran complained that he continues to have neck pain, and he continues to suffer from frequent rolling of his ankles and he has occasional pain in both his ankles. Based on the findings from clinical evaluation, the VA examiner found that the Veteran had current diagnoses of mild cervical strain and mild bilateral ankle strains. 

The March 2013 VA examiner provided medical opinions regarding the etiology of the Veteran's current diagnosed cervical spine and bilateral ankle disorders based on a review of the claims folder and the findings from clinical evaluation. The VA examiner concluded that it was less likely than not that the Veteran's current cervical spine and bilateral ankle disorders were etiologically related to his period of service, to include his claimed in-service injuries. 

The 2013 VA examiner noted that although the service medical records were limited, there was no evidence of chronic neck or ankle disorders. The VA examiner observed that the Veteran only provided vague history of multiple musculoskeletal complaints that have persisted since basic training. Moreover, the post-service medical evidence does not reflect treatment for ankle problems and the Veteran only sought treatment in 1999 for mild neck pain after a dirt bike accident. The VA examiner concluded that since there was no evidence of in-service chronic neck disorder, it was less likely than not that the Veteran's current mild cervical stain was related to his period of service. The VA examiner further concluded that based on the lack of ankle condition noted at the Veteran's separation from service, the lack of post-service treatment for chronic ankle problems, and the minimal findings on clinical evaluation, it was less likely than not that the Veteran's current bilateral ankle strains were related to his period of service. 

In this case, the Veteran seeks entitlement to service connection for his current diagnosed disorders involving his cervical spine and right and left ankles. However, the Board finds that not one of the currently diagnosed disorders was incurred in service or within the first year thereafter. In addition, the Board finds that the preponderance of the evidence is against the finding that the Veteran's current diagnosed disorders are otherwise related to his period of service.

While a complete set of the Veteran's service treatment records is unavailable, the Veteran has provided lay statement and testimony indicating that he injured his neck and ankles during his period of service. However, the Veteran has not asserted, and the medical evidence of record does not show, that he sought any treatment immediately following his separation from service for any chronic neck or ankles disorders. Indeed, the record shows that the Veteran did not seek treatment for his cervical spine until 1997, and there is no medical treatment for bilateral ankle complaints until 2013. Moreover, there is no x-ray evidence of degenerative arthritis involving the Veteran's cervical spine or ankles at any point that would support an award of service connection on a presumptive basis. See 38 C.F.R. § §3.303, 3.307, 3.309. 

The remaining question on appeal is whether the Veteran's current diagnosed disorders are related to his reported in-service injuries. Based on a review of the competent evidence, the Board finds that the preponderance of the evidence is against a finding that his current disorders are related to his period of service. 

The record lacks any medical evidence that links the Veteran's current cervical spine and ankle disorders to his military service. Indeed, the March 2013 VA examiner provided medical opinions that heavily weigh against the Veteran's claims. The VA examiner opined that it was less likely than not that the Veteran's current diagnosed disorders involving cervical spine and ankles were caused by or related to his period of service, to include his reported in-service injuries. Instead, the VA examiner noted that post-service intervening neck injuries that are well documented by the record and lack of treatment for ankle problems at any point as well as minimal findings on clinical evaluation. 

The Board finds it highly pertinent that there is no contradictory medical opinion of record. The Veteran has been accorded ample opportunity to furnish medical and other evidence in support of his service-connection claims, and against the reasoned conclusions of the VA examiner; he has not done so. See 38 U.S.C.A. § 5107(a) (it is a claimant's responsibility to support a claim for VA benefits). 

The Board considered whether the Veteran's lay evidence constitutes competent and credible evidence of etiology in this particular case. Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition; (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing the symptoms at the time support at later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir 2006). In this case, the Board concludes that the etiologies of cervical sprain and bilateral ankle strains go beyond the capabilities of lay observations. Although the Veteran is competent to report his symptoms of pain and immobility, diagnosis of these diseases and determination of their causes requires medical examination, imaging, and detailed assessment of medical history. The Board concludes that the Veteran does not possess the necessary medical training and is not competent to provide an etiology of the disorders. 

As noted above in the legal criteria above, under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third service-connection element for certain chronic diseases, including arthritis, is through a demonstration of continuity of symptomatology. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). However, in this case, there is no x-ray evidence of arthritis involving the Veteran's cervical spine or ankles at any point. 

The Board has still considered the Veteran's lay assertion of symptoms since service. In this regard, the Board accepts the Veteran's accounts that he injured his cervical spine and ankles while performing activities required for physical training during his period of service. The Board also acknowledges the competence of the Veteran's statements that he has had symptoms involving his neck and ankles since his period of service. These are competent recitations of facts as he recalls them.

Competency of evidence, however, differs from weight and credibility. The former is a legal concept determining whether testimony may be heard and considered by the trier of fact, while the latter is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify"). 

The United States Court of Appeals for Veterans Claims has made clear that the Board cannot determine that competent lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). 

In this case, the Board places less probative weight on the report of injuries and continuity of symptoms after service because it is inconsistent with service and post service treatment records. The Board places less probative weight on the Veteran's contended neck and ankles injuries because he made no mention of a history of injuries to any VA or private clinicians throughout his treatment after the 1994 prior his 2006 claims. 

Accordingly, the Board finds that the preponderance of the evidence is against a finding that the Veteran's current cervical spine and bilateral ankles disorders had their onset in service or are otherwise related to his period of service. The evidence in this case is not so evenly balanced to allow application of the benefit-of-the-doubt rule as required by law and VA regulations. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. The preponderance is against the Veteran's claims, and they must be denied.


ORDER

Entitlement to service connection for an acquired psychiatric disorder, identified as depression, is granted. 

Entitlement to service connection for a right ankle disorder is denied. 

Entitlement to service connection for a left ankle disorder is denied. 

Entitlement to service connection for a right knee disorder is denied. 

Entitlement to service connection for a left knee disorder is denied. 

Entitlement to service connection for a neck disorder is denied. 


REMAND

The Veteran's claims for entitlement to service connection for right leg and right hip disorders must be remanded for further development. Although the Board regrets the additional delay, it is necessary to ensure due process is followed and that there is a complete record upon which to decide the Veteran's claims so that he is afforded every possible consideration.

The Board notes that VA must provide an examination when there is evidence of (1) a current disability, (2) an in-service event, injury, or disease, (3) some indication that the claimed disability may be associated with the established event, injury, or disease, and (4) insufficient competent evidence of record for VA to make a decision. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

As discussed above, a complete set of the Veteran's service treatment records is unavailable, and as such, VA has a heightened duty to assist. See O'Hare v. Derwinski, 1 Vet. App. 365 (1991). Here, the available August 1995 report of medical history shows that the Veteran reported history of swollen or painful joints and leg cramps, and he has reported experiencing problems with his right leg and hip since his period of service. These claims must be remanded for a VA medical opinion to determine whether the Veteran's claimed right leg and right hip disorders are etiologically related to service. 

The Board also notes that the medical evidence suggests that the Veteran has some neurologic involvement in his right lower extremity. A medical opinion should also address whether the Veteran's current complaints are manifestations of neurologic involvement in his right lower extremity associated with his service-connected lumbar spine disability. 

Accordingly, the case is REMANDED for the following action:

1. Obtain any additional VA and non-VA treatment records identified by the Veteran. All attempts to secure this evidence must be documented in the claims folder.

2. Schedule the Veteran for a VA medical examination with an examiner (or examiners, if necessary) of appropriate expertise to determine the nature and etiology of his claimed right left and right hip disorders. The claims folder and a copy of this REMAND should be provided to the examiner for review in conjunction with this examination. The examiner should review the claims folder before examining the Veteran and this fact should be noted in the accompanying medical report.

After thoroughly describing the nature and etiology of each of the claimed conditions, the examiner must provide an opinion whether it is at least as likely as not (i.e. a 50 percent or greater probability) that each of the claimed conditions was incurred in or aggravated by the Veteran's active duty military service. For the purpose of this opinion, particularly given the unavailability of most of the Veteran's service treatment records, the examiner should assume that the Veteran is a competent and credible historian as to his experiences in service, such as carrying heavy weights and experiencing significant pain. 

The VA examiner should also address whether the Veteran's complaints in his right lower extremity are manifestations of neurologic involvement associated with his lumbar spine disability. 

While the Board is cognizant that an etiological opinion is difficult to render without complete service treatment records, a complete rationale for all opinions reached should be provided. If the examiner is unable to render any requested opinion, the examiner should explain in detail why such opinion could not rendered. The absence of service treatment records alone is an inadequate justification for the inability to render an opinion.

3. Thereafter, readjudicate the Veteran's claims. If the benefit sought is not granted, issue a supplemental statement of the case and afford the Veteran and his representative an appropriate opportunity to respond. The case should be returned to the Board, as warranted.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).




______________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs